**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| MICHAEL HARRIS, CHRISTOPHER VAUGHT, CALEB NABORS, KATELYN BUTLER, BRITTANY KUBBA, AND DENNIS GOODINE, *individually and on behalf of all others similarly situated*, | Case No. 1:25-cv-107 |
| Plaintiffs, | Class Action |
| v. | |
| LEE UNIVERSITY, | Judge Curtis L. Collier |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR PLAINTIFFS' ATTORNEYS' FEES AND SERVICE AWARDS**

Plaintiffs[1], individually, and on behalf of the Settlement Class, and Class Counsel respectfully move this Court for an order granting Final Approval of the Parties' Settlement Agreement, an attorneys' fees and costs award to Class Counsel, and Service Awards to the Class Representatives. The Motion for Final Approval is made pursuant to Federal Rule of Civil Procedure 23, and is based on this memorandum of law, the Joint Declaration of Class Counsel in Support of Plaintiffs' Motion for Final Approval ("FA Joint Decl."), attached as ***Exhibit A***, and the Declaration of Lindsay Marquez of Kroll Settlement Administration LLC in Support of Final Approval of Settlement ("Admin. Decl."), attached as ***Exhibit B*** to the Motion.

The Court granted Preliminary Approval of the Settlement on May 18, 2026, which provides for substantial Settlement Class Member Benefits, including: (1) up to $5,000.00 per

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached to Plaintiffs' Unopposed Motion for Preliminary Approval as Exhibit A. ECF No. 31-1.

Settlement Class Member for documented losses related to the Data Breach; (2) a *pro rata* cash payment in the estimated amount of $100.00; and (3) one year of one-bureau Credit Monitoring for each Settlement Class Member. *See* ECF No. 40, Preliminary Approval Order. In addition to those benefits, the Defendant is also obligated to separately pay Settlement Administration Costs, and Court-approved attorneys' fees, costs, and Service Awards. When the Court granted Preliminary Approval, it found the Settlement to be within the range of reasonableness for Final Approval and that class certification requirements were met.

Plaintiffs and Class Counsel now move the Court for Final Approval and apply for attorneys' fees and costs to Class Counsel and for Service Awards for the Class Representatives. The Settlement meets all the criteria for Final Approval. As of the filing of this motion, there are no objections, and no Settlement Class members have opted-out. Admin. Decl. ¶¶ 18. The absence of any objections or opt-outs further supports the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. The Parties' counsel fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and they believe the proposed Settlement fairly resolves their differences. FA Joint Decl. ¶ 25-28. For the reasons set forth herein, the Court should grant Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards.

## I. Introduction

On March 22, 2024, an unknown threat actor gained unauthorized access to Defendant's systems, obtaining and exfiltrating the Private Information belonging to approximately 135,472 individuals. SA ¶ 3. After Defendant began notifying the affected individuals whose Private Information may have been impacted as a result of a Data Breach, Plaintiffs initiated this and the consolidated actions in connection with Defendant's alleged failure to safeguard Settlement Class

Members' Private Information. *Id.* ¶ 3, 6-11. Defendant denies all liability and wrongdoing. *Id.* ¶ 11.

After extensive arm's-length negotiations, the Parties reached a Settlement that is fair, reasonable, and adequate, providing meaningful relief to the Settlement Class. *See* ECF No. 32, Joint Declaration of Class Counsel in Support of Plaintiffs' Motion for Preliminary Approval ("PA Joint Decl."), ¶¶ 9, 30, 32. The Settlement's $1,750,000.00 all cash, non-reversionary common Settlement Fund will be used to pay (1) all Participating Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Court-awarded Service Awards; and (4) any Court-awarded attorneys' fees and costs. SA ¶ 68,71. All Participating Settlement Class Members may submit Claims for two types of cash payments and Credit Monitoring. *Id.* Plaintiffs strongly believe the Settlement is favorable to the Settlement Class and warrants Preliminary Approval. PA Joint Decl. ¶ 13, 32.

## II. Background and Procedural History

Defendant Lee University is a private Christian university based in Cleveland, Tennessee. SA ¶ 1. On March 22, 2024, an unknown threat actor gained unauthorized access to Defendant's systems, obtaining and exfiltrating the Private Information belonging to approximately 135,472 individuals. Defendant detected that an unauthorized party had gained access to parts of its internal computer systems in the Data Breach, and, after further analysis, determined that Private Information of Defendant's current and former students, faculty, and staff may have been affected. PA Joint Decl. ¶ 2. On March 25, 2025, Defendant began notifying the impacted individuals that their Private Information may have been impacted by the Data Breach. *Id.* ¶ 4. As a result of the Data Breach, Plaintiffs filed seven proposed class actions against Defendant in the United States District Court for the Eastern District of Tennessee. *Id.* ¶ 5. On July 24, 2025, the related actions

were consolidated into the instant Action. *Id.* In the same order consolidating the related actions, the Court appointed J. Gerard Stranch, IV, of Stranch, Jennings, & Garvey, PLLC and Leanna Loginov of Shamis & Gentile, P.A. as interim class counsel. *Id.* ¶ 6. Plaintiffs filed the operative consolidated Complaint on August 25, 2025, asserting claims against Defendant for negligence, unjust enrichment, breach of implied contract, invasion of privacy, and declaratory relief. *Id.* ¶ 7.

Thereafter, considering the risk, expense, and delay of continued litigation, the Parties began discussing resolving the Action through settlement. *Id.* ¶ 8. To conserve judicial and Party resources, the Parties filed a Joint Notice of Settlement and Request to Stay filed on November 14, 2025, which the Court granted on November 18, 2025. *Id.* ¶ 9. The Parties then worked cooperatively to negotiate and finalize Settlement terms and the Agreement, Notices, and Claim Form accompanying this Motion. *Id.* ¶ 10-11.

On February 9, 2026, Plaintiffs moved for preliminary approval of the Settlement, which the Court granted on May 18, 2026. The Court preliminarily appointed Leanna Loginov and J. Gerard Stranch, IV, as Class Counsel and Plaintiffs as Class Representatives, conditionally certified the Settlement Class for the purposes of settlement only, preliminarily approved the Settlement as fair, reasonable, and adequate, and approved the Notice Program. Thereafter, the Settlement Administrator conducted the ordered Notice Program. *See* Admin. Decl. ¶¶ 4-13. Now, Plaintiffs move the Court for Final Approval of the Settlement Agreement, which has received broad support among the members of the Settlement Class.

## III. Settlement Terms

### a. Settlement Class

The Settlement Class is defined as follows:

> All persons whose Private Information was potentially compromised in the Data Breach, including all individuals to whom Defendant sent an individual notification letter regarding the Data Breach.

SA ¶ 65. Excluded from the Settlement Class are (a) all persons who are directors and officers of Defendant, or their respective subsidiaries and affiliated companies; (b) governmental entities; (c) the Judge(s) assigned to the Action, the Judge's immediate family, and Court staff; and (d) any Settlement Class Member who timely and validly requests to be excluded from this Settlement. *Id.*

### b. Settlement Consideration

The Settlement's non-reversionary $1,750,000.00 Settlement Fund will be the total sum required to be paid by Defendant to settle this Action and will be used to pay (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Court awarded Service Awards; and (4) any Court-awarded attorneys' fees and costs. *Id.* ¶ 68. All Settlement Class Members are all eligible to submit Claims for (1) Credit Monitoring; (2) reimbursement of documented expenses and losses up to $5,000.00; and (3) a *pro rata* cash payment. *Id.*

<u>Reimbursement for Documented Expenses:</u> All Participating Settlement Class Members may submit a Claim for reimbursement of their documented expenses and losses that are fairly traceable to the Data Breach, up to $5,000.00 per Settlement Class Member with third-party documentation, if: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Breach (iii) the loss was incurred after the date of the Data Breach; and (iv) the Settlement Class Member made reasonable but unsuccessful efforts to avoid, or seek reimbursement for, the loss. *Id.* ¶ 74.

Pro Rata Cash Payments: All Participating Settlement Class Members may submit a Claim for a *pro rata* cash payment to compensate them for their alleged harms. *Id.* ¶ 74. This cash payment is in addition to any Claims for Credit Monitoring and reimbursement for document expenses and losses. *Id.* The *pro rata* cash payment is estimated to be $100 per Claimant but may be increased or decreased on a *pro rata* basis to exhaust the Settlement Fund. *Id.* For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring, then for reimbursement for documented expenses, and then for *pro rata* cash payments. *Id.* Any *pro rata* increases or decreases to cash payments will be on an equal percentage basis. *Id.*

Credit Monitoring: In addition to Cash Payment A and Cash Payment B, Settlement Class Members may also make a Claim for Credit Monitoring that will include one year of one-bureau credit monitoring. *Id.*

**c. Cy Pres Recipient**

The Settlement is intended to exhaust the Settlement Fund. *Id.* However, after Settlement Class Members are given an opportunity to cash their checks, as provided for in the Agreement, any remaining funds in the Settlement Fund shall be distributed to the Legal Aid of East Tennessee as the *cy pres* recipient. *Id.* ¶ 110.

**d. Releases**

The Releasing Parties will release the Released Parties of all Released Claims, which include all claims relating to or arising from the Data Breach, including unknown past, present or future Claims. *Id.* ¶ 111. Settlement Class Members who do not opt-out of the Settlement are bound by the Releases regardless of whether they submit a Claim. *Id.* ¶ 112.

**e. Service Awards**

As set forth below, Class Counsel requests that each Class Representative receive a Service Award of up to $2,500.00 (for a total of $15,000.00 for all six Class Representatives), subject to Court approval. *Id.* ¶ 106. The Service Awards are meant to compensate the Class Representatives for their efforts in this Action, including serving as named Plaintiffs, assisting in Class Counsel's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with any anticipated discovery, and answering Class Counsel's questions. *Id.* The Parties did not discuss the payment of Service Awards until after the substantive terms of the Settlement had been agreed upon, and the Settlement is not contingent on approval of the requested Service Awards; if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 108. The Notices advise the Settlement Class of these intended requests and further information on how to object.

**f. Attorneys' Fees and Costs**

As set forth below, Class Counsel respectfully request an award of reasonable attorneys' fees and costs of up to $583,333.33, which shall be paid from the Settlement Fund. *Id.* ¶ 107. The Parties did not discuss the payment of attorneys' fees and costs until after the substantive terms of the Settlement had been agreed upon, and the Settlement is not contingent on approval of the requested attorneys' fees and costs; if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 108. The Notices advise the Settlement Class of these intended requests and further information on how to object.

## IV. The Notice Program Comports with Due Process

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007).

Due process does not require that every class member receive actual notice, and a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (holding that the notice plan was "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class).

Indeed, the Court approved the proposed Notice Program, finding it met the requirements of Rule 23 and due process. The Notice Program has now been fully carried out by the Settlement Administrator, Kroll. Admin. Decl. ¶¶ 4-13.

On May 28, 2026, Kroll received a data file from Defendant containing a class member list of 137,650 records. After deduplicating that list, the final class size was 135,472 individuals. Admin. Decl. ¶ 8. From that, 66,365 included email addresses and 69,107 included physical mailing addresses. *Id.* On June 17, 2026, after running the mailing addresses through the National Change of Address database, Kroll mailed notice via postcard to the 69,107 individuals for whom Defendant had mailing addresses. *Id.* ¶¶ 8–9. On the same day, Kroll provided notice via email to the 66,365 individuals for whom Defendant had email addresses. *Id.* ¶ 10. Of that total, 8,548 emails were undeliverable, and so Kroll sent those individuals notice via Postcard as well. *Id.* Only 227 postcards were returned as undeliverable but with a forwarding address listed, and so those notices were remailed to the new address. *Id.* ¶ 11. An additional 10,148 postcards were deemed undeliverable without a forwarding address. *Id.* ¶ 12. Kroll ran advanced searches on those Class Members and identified mailing addresses for 7,744 of them, and subsequently remailed the postcard notices to their new addresses. *Id.*

On May 22, 2026, Kroll published and continues to maintain a dedicated website at www.leeuniversitydatabreachsettlement.com to provide further notice and helpful information regarding the settlement and its status. *Id.* ¶ 6. The Settlement Website contains important dates, deadlines, and Settlement-related documents, including the Settlement Agreement and Release, the Long Form Notice, the Preliminary Approval Order, and a downloadable version of the Notice of Class Action Settlement, and Claim Form. *Id.* A Settlement-specific toll-free telephone number was also included in the notice. *Id.* ¶ 6. The system is accessible 24 hours a day, seven days a

week, and will remain in operation throughout the Settlement Administration. *Id.* The toll-free telephone number included in the notice and on the website is (833) 930-1181. *Id.*

Overall, the Notice Program was highly effective and satisfied Rule 23 and the requirements of due process to the Settlement Class as is required by the United States Constitution. The Notice Program achieved an overall direct reach of approximately 98.22%. The efforts undertaken in the Notice Program are consistent with best-practicable, Court-approved notice programs in similar matters. Further, this reach rate exceeds the Federal Judicial Center's guidelines concerning appropriate reach, which state that a notice plan that reaches a minimum of 70% of targeted class members is reasonable.

## V. The Settlement Class Should be Certified

### a. The Settlement Class meets the requirements of Rule 23(a)

***Numerosity and Ascertainability:*** Numerosity requires that "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Here, the proposed Settlement Class consists of approximately 135,472 individuals, which easily satisfies this requirement. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("The United States Court of Appeals for the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement."). The Settlement Class is also ascertainable, as Defendant knows the identity of each of these Settlement Class Members. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) (class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member").

***Commonality:*** Rule 23(a)(2) is satisfied when questions of law or fact are common to the class, the resolution of which will bring a classwide resolution. Fed. R. Civ. P. 23(a)(2). It may be indicated when the claims all "depend upon a common contention," with a single common question

sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 56 U.S. 338, 350 (2011). The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Here, Plaintiffs' claims turn on the adequacy of Defendant's data security measures. Evidence to resolve that claim does not vary among Settlement Class, and so can be fairly resolved, for purposes of settlement, for the entire Settlement Class at once.

***Typicality:*** Plaintiffs' claims must also be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Plaintiffs satisfy that requirement here because their claims arise out of the same Data Breach and the cybersecurity protocols Defendant had (or did not have) in place to protect their Private Information, as is the case for all putative Settlement Class Members, and present the same legal theories as would be presented if each Settlement Class Member filed his or her own individual case. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (claims need not be identical but should merely "arise from the same course of conduct"). Because Plaintiffs' claims arise from and address the same Data Breach, the typicality requirement is met here.

***Adequacy:*** Class representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class

through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083. Both criteria are satisfied here.

First, Plaintiffs have common interests with the putative Settlement Class Members in that they were all impacted by the same Data Breach and their claims present common questions of law and fact. Moreover, Plaintiffs have diligently and successfully prosecuted this Action on behalf of the Settlement Class, showing their interests and those of the other Settlement Class Members are aligned. PA Joint Decl. ¶ 17; *Ham v. Swift Transp. Co., Inc.*, 275 F.R.D. 475, 486 (W.D. Tenn. July 1, 2011) (adequacy satisfied where "all plaintiffs were allegedly injured in the same manner by the same actions of the same defendant" and "there is no suggestion that the named plaintiffs will receive a windfall at the expense of any absent class member"). Thus, Plaintiffs have and will continue to adequately represent the Settlement Class, should the Court appoint them as Class Representatives. Second, Plaintiffs have retained knowledgeable and well-qualified Class Counsel who have successfully prosecuted many class actions, including data breach class actions like this case. PA Joint Decl. ¶ 18. Class Counsel put that experience to use in negotiating the early-stage Settlement guaranteeing immediate relief to the Settlement Class. Accordingly, Class Counsel has adequately represented the Settlement Class here.

**b. The Settlement Class meets the requirements of Rule 23(b)**

The Court may certify a Rule 23(b)(3) class if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007); *Ham*, 275 F.R.D. at 482. Both requirements are easily satisfied here.

The predominance inquiry requires the Court to assess "the legal or factual questions that qualify each class member's case as a genuine controversy" and "whether those questions are subject to generalized proof, and thus applicable to the class as a whole." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017). Predominance is met if a single common factual or legal question is "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Here, multiple common questions of law and fact predominate: Plaintiffs' and Settlement Class Members' claims all arise from the same Data Breach and Defendant's same alleged failures to implement reasonable cybersecurity practices. Plaintiffs' and Settlement Class Members' claims also present common questions of law: whether Defendant owed Plaintiffs and the Settlement Class a duty to safeguard their sensitive Private Information; whether Defendant breached that duty; whether Defendant's conduct or failure to act was the proximate cause of the Data Breach; and whether Plaintiffs and Settlement Class Members are entitled to recovery.

The common questions predominate over any individualized issues, like in other data breach cases. *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (predominance satisfied in data breach case despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (same); *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2–3 (D. Kan. Feb. 15, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2–3 (N.D. Ga. Aug. 23, 2016) (same).

Rule 23(b)(3)'s superiority requirement is likewise satisfied because "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *See*

*Arends v. Family Sols. of Ohio, Inc.*, 2022 WL 13915151, at *3 (6th Cir. June 17, 2022) (quoting Fed. R. Civ. P. 23(b)(3)). In other words, a class action is superior if it "is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs.*, Ltd., 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). Here, individual adjudication of all Settlement Class Members' claims would be virtually impossible. Indeed, it would likely mean the individual filing of nearly 137,000 cases, which would drain judicial and advocate resources. Thus, a class action is the superior mechanism for Plaintiffs and Settlement Class Members to seek legal redress for the injuries suffered as a result of the Data Breach. Thus, the Court should certify the Settlement Class for the purpose of this Settlement pursuant to Rule 23(b)(3), which Defendant does not oppose.

## VI. Final Approval of the Settlement Should be Granted

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008). Rule 23 of the Federal Rules of Civil Procedure was amended in 2018 to front-load the class action settlement process to the preliminary approval stage. *See Hacker v. Elec. Last Mile Sols. Inc.*, 2024 WL 1231257, at *4 (D.N.J. Mar. 21, 2024) ("At the preliminary approval stage, the Court is required to peer ahead, and to ask whether it is 'likely' to ultimately approve the proposed settlement at the end-of-the-line fairness hearing.") (quoting Fed. R. Civ. P. 23(e)(1)(B)).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

**a. The Rule 23(e) factors weigh in favor of Final Approval**

The Settlement easily satisfies the Rule 23(e)(2) factors. First, as explained, Plaintiffs and Class Counsel have adequately represented the Settlement Class and secured an excellent result. *See supra* § V(a). Second, the Settlement was negotiated at arms' length, after the Parties had exchanged information sufficient to adequately assess the strengths and weaknesses of the case. FA Joint Decl. ¶ 4-6, 25-28. Third, the relief provided is clearly adequate when taking into account the factors listed in Rule 23. The Settlement provides a substantial recovery for the Settlement Class and does so without additional delay and the uncertainty of litigation, including $1,750,000.00 in monetary recovery. SA ¶ 71. Fourth, all Settlement Class Members are treated

equally. Each Settlement Class Member was eligible to make a claim for one year of Credit Monitoring, reimbursement of their document out-of-pocket expenses (up to $5,000.00), and a *pro rata* cash payment of approximately $100 (depending on the number of filed claims). SA ¶ 74. Moreover, the Settlement makes these benefits available now, without the delay of prolonged litigation and the risk that Class Members would be left with nothing. FA Joint Decl. ¶ 17-20.

Accordingly, all Settlement Class Members are treated equitably and have the same opportunity to participate in the Settlement.

**b. The *UAW* factors weigh in favor of Final Approval**

<u>Factor 1: No risk of fraud or collusion</u>

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt*, 581 F. Supp. 2d at 838. When, as here, a settlement was reached through arms'-length negotiations by experienced counsel, there is no evidence of fraud or collusion. *See, e.g., Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy."). Thus, far from any evidence of collusion, the Settlement here is the result of significant and hard-fought negotiations at arms' length. This factor strongly supports approval.

<u>Factor 2: Litigation through trial would be costly, complex, and time consuming</u>

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151 at *17. The same is true here. Data breach litigation is inherently complex, time

consuming, and costly. It often requires multiple testifying experts, costly investigations of the dark web, and all the expenses needed to litigate these matters can still result in no recovery. FA Joint Decl. ¶ 19. Indeed, absent this Settlement, the Parties would have to litigate through multiple risky expensive phases, including a likely motion to dismiss, class certification, summary judgment, a trial, and appeals. This would take years to finally resolve and could end up with the same result obtained through this Settlement—or it could result in no recovery for the Settlement Class. The Settlement, on the other hand, permits a prompt resolution of this Action on favorable terms that are fair, reasonable, and adequate to the Settlement Class. This result has been accomplished years earlier than if the case proceeded to judgment through trial and/or appeals and provides certainty whereas litigation does not and could result in defeat for the Settlement Class on a motion to dismiss, on class certification, at summary judgment, at trial, or on appeal. Consequently, this *UAW* factor plainly weighs in favor of final approval of the Settlement.

Factor 3: The Parties exchanged informal discovery

The third *UAW* Factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Here, the Parties exchanged informal information during the negotiation process that was sufficient to empower Class Counsel to provide an informed demand and to negotiate this Settlement. FA Joint Decl. ¶ 5-6. Class Counsel's experiences in similar matters, as well as the efforts made by counsel on both sides, confirm that they are and were sufficiently well apprised of the facts of this action and their respective cases to make an intelligent analysis of the Settlement.

Factor 4: Prolonged litigation brings significant risks

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Should litigation continue, Defendant would almost certainly file a motion to dismiss, would contest class certification, and would eventually move for summary judgment. Though Plaintiffs

and their counsel believe strongly in the merits of this Action, they cannot deny the inherent risks in data breach litigation. *See Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex.") (collecting cases). Moreover, at the time the Settlement was reached in this case, the Court had not certified a class, and the Parties anticipate that such a determination would only be reached after lengthy discovery and exhaustive class certification briefing—potentially years down the line. Even if the Court did certify a Rule 23 class, Defendant would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing—thus exacerbating the expense and delay of prolonged litigation. In Class Counsel's experience, these additional steps in litigation can take years to resolve. The proposed Settlement eliminates this risk, expense, and delay and awards Class Members payment promptly. This factor favors final approval.

<u>Factor 5: Class Counsel and the named Plaintiffs support the Settlement</u>

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *18. Here, both Class Counsel and Plaintiffs support the Settlement. They do so, because, as explained, this Settlement is an excellent result for Class Members considering defenses likely to be raised by Defendant. FA Joint Decl. ¶ 17-21. This factor thus also favors final approval.

<u>Factor 6: The Reaction of absent Class Members is overwhelmingly positive</u>

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. In most class settlements, a small number of opt outs and objections "are to be expected" and do not impact a settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D.

Mich. 2003); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). Here, no Class Members have requested to opt out, and no Class Members have objected to the Settlement. Admin. Decl. ¶ 18. This *UAW* factor therefore plainly weighs in favor of final approval. *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."). Moreover, given the size of the Settlement Class here, the fact that no Class Members have requested exclusion is an indication of the settlement's fairness. *IUE- CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (collecting cases); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."). This factor weighs in favor of final approval.

<u>Factor 7: The Settlement serves public interest</u>

The seventh and final *UAW* factor is whether the Settlement supports "public interest." *UAW*, 497 F.3d at 631. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530. Further, when individual class members seek relatively low damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen*, 417 U.S. at 161. Society undoubtedly has a strong interest in incentivizing attorneys to bring complex litigation that is necessary to protect the

privacy of individuals' most personal information—especially given that such privacy violations would likely go unredressed in absence of a class action. This factor therefore supports final approval.

## VII. The Court Should Affirm Its Appointments of Class Counsel and Class Representatives

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interest of the class." Rule 23(g)(1)(B). In making this determination, courts generally consider the following factors: (1) proposed class counsel's work in identifying or investigating potential claims; (2) proposed counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) proposed class counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the class. Rule 23(g)(1)(A)(i-iv); 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:48 (6th ed.). In its Preliminary Approval Order, the Court conditionally appointed Leanna Loginov and J. Gerard Stranch, IV as lead Class Counsel. See ECF No. 40. The Court should affirm this conditional appointment. Class Counsel have successfully steered this matter through the hard-fought negotiations and throughout this settlement approval process. Class Counsel have proven themselves capable of representing the Settlement Class and producing significant results. Moreover, Class Counsel have significant experience in consumer class litigation and especially in privacy litigation. FA Joint Decl. ¶ 25. Thus, the Court should affirm its appointment of Ms. Loginov and Mr. Stranch as Class Counsel. Moreover, the Court should affirm its conditional appointment of Plaintiffs as Class Representatives. Plaintiffs have represented the Settlement Class admirably and have at all times assisted Counsel in prosecuting this matter as was necessary—as is evidenced by the outcome here. Thus, the Court should affirm their appointment as Class Representatives.

## VIII. Class Counsel's Requested Attorneys' Fees and Costs are Reasonable

In conjunction with Final Approval, Plaintiffs and Class Counsel also apply for an award of attorneys' fees in the amount of $583,333.33, or one-third of the $1,750,000 Settlement Fund, which includes reimbursement of Class Counsel's reasonable litigation costs of $4,311.79, and which Defendant agreed not to oppose, as part of the proposed Settlement. SA ¶ 107. As shown below, the requested fees and costs are fair and reasonable, are consistent with awards approved by federal courts throughout Tennessee and the Sixth Circuit, and should be approved here.

### *i. Plaintiffs' Fee Request is Reasonable*

Federal Rule of Civil Procedure 23(h) expressly authorizes courts in class action settlements to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As the U.S. Supreme Court has observed, under the law, "lawyer[s] who recover[ ] a common fund . . . [are] entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In the Sixth Circuit, the only requirement is that "awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings v. Prudential Bache Props., Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)).

A district court has discretion to use either the percentage of the benefit method or the lodestar method to calculate attorneys' fees. *Rawlings*, 9 F.3d at 516. If a fee award is reasonable under one of these two methods, the court is not required to "crosscheck" with the other method. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282–83 (6th Cir. 2016). The Sixth Circuit has increasingly favored the utilization of the percent-of-fund approach in common fund cases. *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 2020 WL 3053468, at *1

(M.D. Tenn. May 29, 2020) (affirming the use of the percent-of-fund method in assessing attorneys' fees); *Rawlings*, 9 F.3d at 515; *Van Gemert*, 444 U.S. at 478 (same); *Newberg on Class Actions* § 12.55 (noting recent criticisms of the lodestar method of computing fees).[2] Indeed, this method "more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 515. The percent-of-fund approach is consistent with the private marketplace where contingent fee attorneys are routinely compensated on a percentage of recovery method. *Manners*, 1999 WL 33581944, at *29. Further, the percent-of-benefit approach best aligns the interests of class counsel with that of the class, providing "a strong incentive to plaintiffs' counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances." *Id.*; *Duhaime v. John Hancock Mut. Life. Ins. Co.,* 989 F. Supp. 375, 377 (D. Mass. 1997) (noting that the advantage of the percentage method is that it focuses on result, rather than process, which better approximates the workings of the marketplace) (internal quotations omitted).[3]

When evaluating the reasonableness of Plaintiffs' request, courts routinely look to fee awards approved in similar complex litigation. *See Ware v. CKF Enters., Inc.*, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) ("[C]ourts within this circuit have found one-third common fund attorney's fee awards to be reasonable[.]"). Courts in this Circuit likewise continue to approve fee awards of one-third of common settlement funds in complex class actions, including data breach

---

[2] By contrast, "the lodestar method has been criticized for being too time-consuming of scarce judicial resources." *Rawlings*, 9 F.3d. at 516 (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269–70 (D.C. Cir. 1993); *Court Awarded Attorneys' Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237, 250 (1985)). "With the emphasis it placed on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Rawlings*, 9 F.3d at 517.

[3] Quoting the Seventh Circuit, this Court has reflected that the "contingent fee uses private incentives . . . to align the interests of lawyer and client . . . At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation." *Manners*, 1999 WL 33581944, at *29 (quoting *Kirchoff v. Flynn*, 786 F.2d 320, 325–26 (7th Cir. 1986)).

litigation. Additionally, courts in this Circuit consider six factors when analyzing the reasonableness of class action fees: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996).

1. <u>The fees requested by Settlement Class Counsel are well within the range of fees approved by Sixth Circuit courts.</u>

Numerous courts have recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Van Gemert*, 444 U.S. at 478. Courts throughout the Sixth Circuit have approved attorneys' fees ranging from 20% to 50% of the common fund, and one-third (33.33%) is within the range of approval.[4] Additionally, in data breach cases in particular, courts have found that an award of one-third is customary and typical of like awards.[5] Accordingly, Class

---

[4] *See, e.g., In re AME Church Emp. Ret. Fund Litig.*, 2025 WL 2396514, at *12 (W.D. Tenn. Aug. 18, 2025)("The one-third fee requested is within the range of fee awards made by courts in this Circuit"), *citing In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015); *See Hosp. Auth.*, 2020 WL 3053468 (awarding one-third fee); *Fitzgerald v. P.L. Mktg., Inc.*, 2020 WL 3621250 (W.D. Tenn. July 2, 2020) (approving fees equal to 33 1/3% of the $1,575,000 settlement fund); *In re Se. Milk Antitrust Litig.*, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012) (collecting cases and noting that a 33⅓ percent attorney's fee "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Gokare*, 2013 WL 12094887, at *4 (collecting cases in which courts in this Circuit have approved attorney's fee awards in common fund cases ranging from 30% to 33% of the total fund).

[5] *All. Ophthalmology, PLLC v. ECL Grp., LLC*, 2024 WL 3203226, at *15 (M.D.N.C. June 27, 2024) (one-third fee in data breach settlement); *Thomsen v. Morely Cos.*, 2023 WL 3437802, at *2 (E.D. Mich. May 12, 2023) (awarding 33% and finding that amount to be "presumptively reasonable"); *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *8 (E.D. Wis. Mar. 22, 2023) (overruling objector and awarding fee of one-third of gross settlement fund and 41% of net settlement fund); *In re Novant Health, Inc.*, 2024 WL 3028443, at *9 (M.D.N.C. June 17, 2024)

Counsel's request for $583,333.33, which is equivalent to one-third of the $1,750,000 non-reversionary Settlement Fund, is well within the range of reasonableness.

2. The value conferred on the Settlement Class and society is substantial.

The value conferred by the Settlement, i.e., the results obtained, is the most important factor in the Court's analysis of the requested fees. *See Hensley v. Eckerhart,* 461 U.S. at 436 ("the most critical factor is the degree of success obtained"). Settlement Class Counsel here have been successful in negotiating a significant benefit to approximately 135,472 Settlement Class Members. From the $1.75 million non-reversionary Settlement Fund, Class Members can claim significant benefits, including a *pro rata* Cash Payment estimated to be $100 (which can be claimed without documentation or proof of out-of-pocket loss), up to $5,000 in documented out-of-pocket losses, and one year of one-bureau credit monitoring (again without any proof of out-of-pocket loss). SA ¶¶ 71, 74. These benefits are funded through a $1,750,000 non-reversionary common fund, ensuring that every dollar remaining after payment of approved fees, expenses, notice and administration costs, and service awards will benefit Settlement Class Members. SA ¶ 71. Class Counsel achieved these real, tangible, and substantial benefits for the Settlement Class while avoiding the risk and delay that would come with continued litigation.

Moreover, the Settlement was achieved at an early stage of the litigation, before the parties incurred the substantial expense associated with contested class certification, expert discovery, summary judgment, and trial. By resolving the litigation at this stage, Class Counsel preserved Settlement Fund resources while securing immediate and meaningful relief for the Settlement

---

(awarding class counsel fees of one-third of $6.6 million in data privacy settlement); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (approving one-third fee of over $29 million and noting that amount "is typical in other data privacy settlements"), *appeal dismissed sub nom. In re Tiktok Inc., Consumer Priv. Litig.*, 2022 WL 19079999 (7th Cir. Oct. 12, 2022).

Class. *See* Doc. 32, Joint Decl. ¶¶ 5-9.

Additionally, the Settlement Agreement is also in the public's interest. Moreover, society has a stake in rewarding attorneys who produce benefits in data breach cases because such suits serve not only to compensate victims but also to deter allegedly lax data security practices by other entities and to encourage entities to spend adequately on data security to prevent harm. Indeed, without data breach litigation or a significant increase in government enforcement actions, companies would have far less financial incentive to live up to their duties to reasonably protect highly sensitive and confidential consumer and patient data.

3. The value of services provided by Class Counsel is substantial.

Due in large part to Class Counsel's substantial experience litigating complex privacy and data breach class actions, the parties were able to negotiate a favorable Settlement after sufficient investigation of the claims and defenses, while avoiding the considerable expense associated with prolonged litigation. Although the Settlement was reached before extensive merits discovery, Class Counsel conducted a thorough investigation into the underlying facts, analyzed Defendant's publicly available disclosures regarding the Data Breach, researched applicable legal issues, evaluated Defendant's potential defenses, and participated in arm's-length settlement negotiations before recommending the Settlement to Plaintiffs. Doc. 32, Joint Decl. ¶ 10. And, despite the early stage at which this case reached Settlement, the relief provided for exceeds that given Final Approval in other data breach cases by courts across the country.[6]

[6] *See, e.g.*, *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements;); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit

Additionally, Class Counsel took this case on a purely contingent basis. FA Joint Decl. ¶ 10. The matter required Class Counsel, other attorneys at Class Counsel's firms, and other Plaintiffs' counsel to spend time on litigation that could have been spent on other matters. *Id.* At various times during the litigation, the time contributed was substantial. *Id.* As the District Court of the Middle District of Tennessee has found, "[t]he risk of loss in any litigation is quite real." *Manners*, 1999 WL 33581944, at *30. Class Counsel here took on real risk that demonstrated their commitment to obtaining valuable relief on behalf of the class. *See id.* As such, this factor weighs in favor of approval.

4. Data breach litigation is complex and evolving.

Data breach litigation is evolving; there is no guarantee of the ultimate result. While Plaintiffs are confident in the strength of their claims, they are also pragmatic in their awareness of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant has consistently denied the allegations raised by Plaintiffs and made clear at the outset that it would vigorously defend the case. Indeed, Defendant intended to assert numerous, and potentially dispositive, defenses, including by moving to dismiss the Complaint. Doc. 32, Joint Decl. ¶ 21. Accordingly, Plaintiffs first faced the substantial hurdle of successfully opposing a motion to dismiss—a stage at which many data breach actions have failed. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). If Plaintiffs successfully opposed a

---

monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Linnins v. HAECO Ams., Inc.*, No. 16-cv-486, 2018 WL 5312193, at *1-3 (M.D.N.C. Oct. 26, 2018) (settlement included $312,500 claim fund for reimbursement specified expenses to employees whose PII was alleged disclosed in breach).

motion to dismiss the Complaint, they would need to gain and maintain class certification, prevail on summary judgment, win at trial, and prevail on appeal. Doc. 32, Joint Decl. ¶ 23. Class certification alone presents a significant hurdle and has been denied or reversed in other data breach cases.[7] Therefore, the risk of establishing liability, damages, and maintaining the Action as a class action throughout trial are all substantial.

Moreover, as described above, data breach cases are risky, complex, and expensive. Courts still struggle with analyzing data breach claims and often come to inconsistent conclusions, and data breach cases like this Action often require significant technological knowledge and testimony from expensive expert witnesses, who commonly charge $600 or more an hour. Doc. 32, Joint Decl. ¶¶ 23-24. Class Counsel therefore assumed a significant risk in prosecuting this Action on a purely contingent basis and devoted their experience and resources to obtaining a meaningful recovery for the Settlement Class despite the uncertainty of continued litigation. The risk involved, and the complexity of data breach cases generally, weighs in favor of granting Class Counsel's reasonable request.

5. <u>Class Counsel is qualified and experienced</u>.

As previously demonstrated in Plaintiffs' Motion for Appointment of Interim Class Counsel and Motion for Preliminary Approval, Class Counsel possesses significant experience leading the prosecution of complex class action matters, including many data breach class actions all over the country. Doc. 32, Joint Decl. ¶ 31. Class Counsel's significant experience has afforded

[7] *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123 (4th Cir. 2025) (reversing reinstated class certification); *Marriott Int'l, Inc. v. Accenture LLP*, 78 F.4th 677, 688 (4th Cir. 2023) (vacating class certification in data breach case); *Theus v. Brinker Int'l, Inc.*, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (denying class certification in a data breach case); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2024 WL 2155221 (D.S.C. May 14, 2024) (same).

them and their law firms deep knowledge of the claims and defenses common in data breach litigation. Moreover, Class Counsel and their firms' partners have been appointed Class Counsel in a number of data breach and privacy class actions. Doc. 32-1 and 32-2, firm resumes of Class Counsel. The significant experience and qualifications of Class Counsel easily justify the requested fee of one-third of the Settlement Fund.

*ii. Plaintiffs' Request for Costs is Reasonable*

Plaintiffs have incurred unreimbursed litigation expenses of $4,311.79 in ordinary litigation costs, such as filing and service fees, *pro hac vice* costs, and mediation expenses. FA Joint Decl. ¶ 30. These are the type of costs regularly billed by attorneys to paying clients.[8] Due to Class Counsel's ability to settle this litigation early, costs are low, are incidental and necessary to litigation, and should be approved. These costs are reasonable and necessary for the litigation and provided value to Settlement Class.

**IX. Class Representatives' Service Awards are Reasonable**

Sixth Circuit Courts will approve service awards for class representatives whose involvement in the litigation and efforts on behalf of the class justify compensation above and beyond amounts to which they are entitled by virtue of their class membership alone. *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Plaintiffs here seek Service Awards of $2,500 for each of the Class Representatives, for a total not to exceed $15,000, as authorized by the Settlement Agreement. SA ¶ 106. The Service Awards are meant to compensate Plaintiffs for their efforts on

[8] *See e.g.*, *Fitzgerald*, 2020 WL 3621250, at *11 (awarding reimbursement of expenses including filing fees, *pro hac vice* fees, service fees, and mediator fees); *Johnson v. W2007 Grace Acquisition I, Inc.*, No. 13-cv-2777, 2015 WL 12001269, at *14 (W.D. Tenn. Dec. 4, 2015); *See Fitzgerald*, 2020 WL 3621250, at *11 (citing *Newberg on Class Actions* § 16:5); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534–35 (E.D. Mich.) (court in a common fund case awarded costs that were "the type routinely billed by attorneys to paying clients in similar cases") (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001)).

behalf of the Settlement Class, which include maintaining contact with counsel, participating in client interviews, providing relevant documents, assisting in the investigation of the case, reviewing relevant pleadings and the Settlement Agreement, answering Class Counsel's many questions, and undertaking the responsibilities and risks associated with serving as class representatives in this litigation. FA Joint Decl. ¶ 14. Plaintiffs' request is consistent, and in fact modest compared with others accepted by Sixth Circuit courts.[9] Accordingly, Plaintiffs' request should be approved.

## X. Conclusion

For all the foregoing reasons, Plaintiffs and Class Counsel respectfully request this Court enter an order: (a) granting Final Approval to the Settlement; (b) affirming certification of the Settlement Class for settlement purposes; (c) reaffirming the appointment of Plaintiffs as Class Representatives; (d) reaffirming the appointments of Leanna Loginov and J. Gerard Stranch, IV, as Class Counsel; (e) awarding Class Counsel $583,333.33 in attorneys' fees and costs; (f) awarding Service Awards to the Class Representatives in the amount of $2,500.00 each; (g) overruling timely objections, if any; and (h) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as ***Exhibit C***.

[9] *See, e.g., Fitzgerald*, 2020 WL 3621250, at *11 (approving service award of $7,500 to plaintiffs who participated in client interviews and produced relevant documents); *Salinas v. U.S. Xpress Enters., Inc.*, No. 1:13-cv-00245, 2018 WL 1477127, at *10 (E.D. Tenn. Mar. 8, 2018) (collecting cases in which courts approved service payments to named plaintiffs between $7,500 and $10,000); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (approving $7,500 service payment to named plaintiff).

Dated: July 20, 2026

Respectfully submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (TN BPR 23045)
Grayson Wells (TN BPR 039658)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

Leanna Loginov
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

***Class Counsel***